No. 98-152

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 40

298 Mont. 300

997 P. 2d 107

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JAY MICHAEL CLARK,

Defendant and Appellant.

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Lake,

The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Rebecca T. Dupuis and C. Edward Hayes; Polson, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Micheal S. Wellenstein,

Assistant Attorney General; Helena, Montana

Kim Christopher, Lake County Attorney; Robert Long, Deputy

County Attorney; Polson, Montana

Submitted on Briefs: October 14, 1999

Decided: February 15, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1.Jay Michael Clark appeals from the judgments entered by the Twentieth Judicial District Court, Lake County, in cause Nos. DC-97-54 and DC-97-59. We affirm in part, reverse in part, and remand.

¶2.The issues presented on appeal are as follows:

¶3. Whether the District Court erred when it denied Clark's motion in limine with respect to a witness' identification testimony?

¶4. Whether the District Court erred when it denied Clark's motions for substitution of prosecuting attorney?

¶5. Whether the District Court erred when it denied Clark's motions to dismiss the charges of driving while license suspended or revoked?

¶6. Whether the sentences imposed by the District Court constitute cruel and unusual punishment?

## BACKGROUND

¶7.On June 14, 1994, the county attorney's office in Lake County filed a Complaint in Justice Court, alleging that Jay Michael Clark had committed the following misdemeanor

traffic offenses on June 13, 1994: (1) Count I: Driving While Under the Influence of Alcohol (third offense) in violation of § 61-8-714(3), MCA; (2) Count II: Accident Involving Damage to Vehicle in violation of § 61-7-104, MCA; (3) Count III: Driving While License Suspended or Revoked in violation of § 61-5-212, MCA. Count I was amended at Clark's initial appearance for driving while under the influence (third offense) to negligent endangerment in violation of § 45-5-208, MCA.

¶8.On September 5, 1995, Clark was also cited for numerous misdemeanor traffic offenses. Clark failed to present himself at the trials, relating to both the June 13, 1994, and the September 5, 1995 charges, conducted by the Justice Court. Clark was convicted in absentia of all charges filed against him. Subsequently, Clark filed a petition for writ of habeas corpus with the District Court, which was granted. The District Court concluded that Clark was denied his constitutional and statutory rights when he was tried in absentia without counsel, vacated the judgments entered by the Justice Court, and ordered new trials in both causes. Afterward, Clark filed a complaint against the prosecuting deputy county attorney and the county attorney for Lake County with the Commission on Practice, alleging a violation of Rule 3.8 of the Rules of Professional Conduct that requires a prosecutor to make reasonable efforts to assure that a defendant has been given a reasonable opportunity to obtain counsel.

¶9.Clark failed to show up for the second Justice Court trial on the charges stemming from June 13, 1994, and was convicted in absentia. Upon retrial of the charges stemming from September 5, 1995, Clark was convicted of all but two of the eight charges filed against him. Clark appealed his convictions to the District Court.

¶10.Clark filed a motion for substitution of prosecuting attorney with the District Court in both causes, alleging prosecutorial vindictiveness and conflict of interest. After considering the briefs filed by the parties on this issue and determining good cause therefore, the District Court denied Clark's motions.

¶11.In cause No. DC-97-54, relating to the charges stemming from June 13, 1994, Clark filed a motion in limine requesting an order precluding identification testimony from a particular witness. The basis for Clark's motion in limine was that the witness' identification testimony was derived from impermissibly suggestive methods employed by the State, giving rise to a substantial likelihood of misidentification. After the matter had been fully briefed by the parties and the District Court determining good cause therefore, the District Court denied Clark's motion in limine.

¶12. With regard to cause No. DC-97-54, Clark pled guilty to Count I negligent endangerment; Count II damage to a vehicle and leaving the scene of an accident; and entered into a stipulation regarding the facts and requested dismissal of Count III driving while license suspended or revoked. With regard to cause No. DC-97-59, relating to the charges stemming from September 5, 1995, Clark pled guilty to four of the six remaining charges; proceeded to trial on Count V, driving while under the influence (third offense); and entered into a stipulation regarding the facts and requested dismissal of Count IV, driving while license suspended or revoked. At the conclusion of the trial, the District Court found Clark guilty of driving while under the influence (third offense).

¶13. After the issue concerning dismissal of the charge of driving while license suspended or revoked had been fully briefed by the parties and the District Court determining good cause therefore, the District Court denied Clark's motion to dismiss. Upon its ruling, the District Court conducted a sentencing hearing with regard to Clark's convictions. Following sentencing, the District Court entered a judgment in both causes setting forth Clark's convictions and the corresponding sentences. Clark appeals from the judgments entered by the District Court.

## STANDARD OF REVIEW

¶14. We have previously stated that "[a] motion in limine to prevent an in-court identification is essentially a motion to suppress." *State v. Greywater* (1997), 282 Mont. 28, 36, 939 P.2d 975, 980 (citation omitted). "The standard of review for a district court's denial of a motion to suppress is whether the court's findings of fact are clearly erroneous, and whether those findings were correctly applied as a matter of law." *State v. Williams* (1995), 273 Mont. 459, 462, 904 P.2d 1019, 1021 (citation omitted).

¶15. "The grant or denial of a motion to dismiss in a criminal case is a question of law." *State v. Weaver*, 1998 MT 167, ¶ 43, 290 Mont. 58, ¶ 43, 964 P.2d 713, ¶ 43 (citations omitted). Our standard of review of a district court's conclusions of law is plenary and we will review the court's conclusions of law to determine whether those conclusions are correct. *See Weaver*, ¶ 43 (citations omitted).

¶16. We review sentences for legality only and will not disturb a district court's sentencing decision absent a showing that the district court abused its discretion. *See State v. Hurlbert* (1988), 232 Mont. 115, 123, 756 P.2d 1110, 1115 (citation omitted).

# ISSUE 1

¶17.Whether the District Court erred when it denied Clark's motion in limine with respect to a witness' identification testimony?

¶18.Clark argues that a due process violation occurs when evidence derived from suggestive identification procedures are admitted at trial. The State contends that had Clark gone to trial, the witness' identification of him would have been reliable and there was not a substantial likelihood of irreparable misidentification. After the matter had been fully briefed by the parties, the District Court, finding good cause therefore, denied Clark's motion in limine.

¶19.We apply the two-prong test set forth in *Neil v. Biggers* (1972), 409 U.S. 188, 198, 93 S. Ct. 375, 381, 34 L. Ed. 2d 401, 411, to determine if an in-court identification based upon a pretrial identification is admissible:

First, we must determine whether the pretrial identification procedure was impermissibly suggestive; and second, if impermissibly suggestive, did the procedure have such a tendency to give rise to a substantial likelihood of irreparable misidentification that to allow the witness to make an in-court identification would violate due process, under the totality of the circumstances.

*State v. Schoffner* (1991), 248 Mont. 260, 265-66, 811 P.2d 548, 552 (citations omitted).

¶20.In September 1997 the county attorney's office sent a letter to the witness along with two photographs of Clark in jailhouse attire. Moreover, the State affirmatively identified the person in the photos to be Clark and asked the witness to notify the county attorney's office if the photos did not depict the person she saw in the car on June 13, 1994. We have previously recognized the suggestive nature of this type of identification procedure and the State concedes that this identification procedure was impermissibly suggestive, satisfying the first prong of the test.

¶21."Under the second prong of the test, we must determine whether, under the totality of the circumstances, the identification procedure gave rise to a substantial likelihood of irreparable misidentification." *Schoffner*, 248 Mont. at 266, 811 P.2d at 552. The factors to be considered in evaluating the likelihood of misidentification are as follows:

1. The opportunity of the witness to view the criminal at the time of the crime;

2. The witness' degree of attention;

3. The accuracy of the witness' prior description of the criminal;

4. The level of certainty demonstrated by the witness at the confrontation; and

5. The length of time between the crime and the confrontation.

*See Schoffner, 248 Mont. at 266, 811 P.2d at 552 (citing Biggers, 409 U.S. at 199-200, 93 S. Ct. at 382, 34 L. Ed. 2d at 411).*

¶22. On June 13, 1994, the witness was traveling northbound on Highway 93 when she observed a vehicle that was traveling southbound enter her lane of traffic, causing her to take evasive action. After taking evasive action, the witness pulled off the side of the road, parked her car, and approached the vehicle that had come to rest in a turnout after hitting a guardrail. The witness looked inside the vehicle, observing the driver slumped over toward the passenger side and a pistol located on the car seat. The witness watched the driver push himself up and noticed that he appeared to be drunk, but did not talk to him. Then the witness became concerned about the pistol and left to notify the police. When the witness returned, a highway patrol officer was on the scene and the driver and the pistol were gone.

¶23. The officer noticed a wallet on the car seat, entered the car, and retrieved it. The officer located a driver's license in the wallet and showed it to the witness, who identified the person depicted on the license, Clark, as the person who had been driving the vehicle. Later, upon Clark's motion to suppress, the District Court ordered Clark's driver's license and the identification of Clark by the witness from the driver's license suppressed.

¶24. Now, we turn our attention to the second prong of the test and analyze the five factors for evaluating the likelihood of misidentification. First, the witness had ample opportunity to observe Clark while she stood next to his car for a few minutes, attempting to determine if he was injured. She watched while Clark pushed himself up from a slumped over position and noticed that he appeared to be drunk. Second, while the witness may have noticed a pistol on the car seat, her attention was focused on Clark and whether he was injured. Third, there is no mention in the record of any descriptions of Clark provided by the witness. Fourth, while Clark does not refute the certainty of the witness' identification of him from the photographs, he argues that her certainty should be given little weight due

to the impermissibly suggestive nature of the photos. As pointed out by the State, Clark's argument addresses the first prong of the test, the suggestive nature of the pretrial identification, which has already been conceded by the State.

¶25.Finally, Clark argues that substantial weight should be given to the amount of time between the witness' observation of Clark at the accident scene in 1994 and the identification of Clark from the photographs in 1997. In most cases, such a lapse in time would be a seriously negative factor. *See Neil*, 409 U.S. at 201, 93 S. Ct. at 383, 34 L. Ed. 2d at 412. However, the procedural history of this case makes this lapse in time less significant. It was not until after two Justice Court trials and an appeal to District Court that Clark moved to suppress his driver's license and the witness' identification from the license. Immediately following entry of the District Court's suppression order, the prosecutor sent the photos to the witness. The witness' ability to identify Clark at trial would not have been rendered unreliable in light of the witness' observation of Clark in broad daylight only a few feet away at the accident scene. Thus, considering the totality of the circumstances, we conclude that while the identification procedure was impermissibly suggestive, it did not create a substantial likelihood of misidentification. Therefore, the District Court did not err when it denied Clark's motion in limine with respect to the witness' identification testimony.

## ISSUE 2

¶26.Whether the District Court erred when it denied Clark's motions for substitution of prosecuting attorney?

¶27.Clark contends that the District Court erred when it denied his motions for substitution of prosecuting attorney, which were based on claims of prosecutorial vindictiveness and conflict of interest. The State argues that Clark waived his right to appeal any nonjurisdictional claims when he pled guilty to many of the offenses charged. With regard to the remaining charges, the State asserts that Clark's claims of prosecutorial vindictiveness and conflict of interest are unpersuasive. After considering the briefs filed by the parties on this issue and determining good cause therefore, the District Court denied Clark's motions.

¶28.Clark's argument with respect to prosecutorial vindictiveness is based on an incident that allegedly occurred during the State's sentencing recommendations in the Justice Court proceeding. There is no record of the sentencing hearing conducted by the Justice Court.

Moreover, as the State correctly points out, Clark's appeal to the District Court for a trial de novo began a new proceeding against him. *See City of Billings v. Smith* (1997), 281 Mont. 133, 141, 932 P.2d 1058, 1063. Due to the lack of a record in Justice Court and the trial de novo conducted by the District Court, Clark cannot establish that a violation of his due process rights occurred as a result of prosecutorial vindictiveness.

¶29.Clark's argument for substitution of prosecuting attorney due to a conflict of interest was based on the fact that he had filed a complaint with the Commission on Practice against the prosecuting deputy county attorney and the county attorney, following the District Court's grant of his petition for writ of habeas corpus. Clark asserts that the filing of the complaint with the Commission on Practice created a reasonable possibility that the deputy county attorney and the county attorney would not deal evenhandedly with him. To the contrary, the record reflects the prosecutor's willingness to enter into a stipulation of facts regarding the status of Clark's driver's license, establishing Clark's completion of an addiction treatment program.

¶30.Similar to the defendant in *State v. Dahms* (1992), 252 Mont. 1, 9-10, 825 P.2d 1214, 1219, Clark presents little authority in support of his position and no evidence demonstrating that his prosecution was handled any differently because of his pending complaint to the Commission on Practice. Accordingly, we conclude that the District Court did not err when it denied Clark's motions for substitution of prosecuting attorney, which were based on prosecutorial vindictiveness and conflict of interest.

## ISSUE 3

¶31.Whether the District Court erred when it denied Clark's motions to dismiss the charges of driving while license suspended or revoked?

¶32.Clark claims that his driver's license was improperly re-revoked when the counselor for the addiction treatment program failed to notify the court of his completion of the program. The State argues that it is irrelevant whether Clark completed the treatment program because he failed to pay the mandatory license reinstatement fee and thus, his license was still revoked on June 13, 1994, and September 5, 1995. After the matter had been fully briefed by the parties, the District Court, finding good cause therefore, denied Clark's motions to dismiss.

¶33.In 1993 and 1995, § 61-2-107(1), MCA, stated:

Notwithstanding the provisions of any other law of the state, a driver's license that has been suspended or revoked under 61-5-205 or 61-8-402 *must remain suspended or revoked until the driver has paid to the department a fee of $100* in addition to any other fines, forfeitures, and penalties assessed as a result of conviction for a violation of the traffic laws of the state.

(Emphasis added). We have previously interpreted this statute to mean that "a period of suspension or revocation continues until a defendant pays the required fee." *State v. Cooney* (1997), 284 Mont. 500, 510, 945 P.2d 891, 897.

¶34.Here, the parties entered into stipulations indicating that Clark's license had been revoked in December 1992 pursuant to § 61-5-205, MCA (1991), for one year and that no reinstatement fee had been paid as of June 13, 1994, or September 5, 1995. As a result, we conclude that Clark's license was still revoked on June 13, 1994, and September 5, 1995. Therefore, the District Court did not err when it denied Clark's motions to dismiss the charges of driving while license suspended or revoked.

## ISSUE 4

¶35.Whether the sentences imposed by the District Court constitute cruel and unusual punishment?

¶36.Clark contends that while he was sentenced within the maximum sentences allowed by law for the offenses for which he was convicted, the sentences are so greatly disproportionate to the sentences imposed against other defendants for the same offenses that it shocks the conscience and outrages the moral sense of the community and justice. The State asserts, *inter alia*, that Clark's criminal history and the facts surrounding his offenses clearly justify his sentences and belie any claim of cruel and unusual punishment. Moreover, it is important to begin our analysis of this issue with a reminder that we review sentences for legality only.

¶37.The applicable statutes and the District Court's sentencing are as follows:

1. Under § 45-5-208, MCA (1993), a person convicted of the offense of negligent endangerment shall be fined an amount not to exceed $1,000 or imprisoned in the county jail for a term not to exceed 1 year, or both. The District Court sentenced Clark to 1 year in the Lake County jail with 6 months suspended and fined Clark $1,000 with $500

suspended.

2. Under §§ 61-7-104 and 61-7-118, MCA (1993), a first offender convicted of an accident involving damage to vehicle shall be punished by a fine of not less than $10 or more than $100 *or* by imprisonment for not more than 10 days. The District Court sentenced Clark to serve 10 days in the Lake County jail and fined Clark $100.

3. Under § 61-5-212, MCA (1993), a person convicted of the offense of driving while license suspended or revoked shall be punished by imprisonment for not less than 2 days or more than 6 months and may be fined not more than $500. The District Court sentenced Clark to 6 months in the Lake County jail with 3 months suspended and fined Clark $500 in cause number DC-97-54.

4. Under § 61-6-304, MCA (1993), a third or subsequent conviction of operating a vehicle without valid liability insurance is punishable by a fine of $500 or by imprisonment in the county jail for not more than 10 days, or both. The District Court sentenced Clark to 6 months in the Lake County jail with all suspended but 30 days and fined Clark $300.

5. Under § 61-5-212, MCA (1993), a person convicted of the offense of driving while license suspended or revoked shall be punished by imprisonment for not less than 2 days or more than 6 months and may be fined not more than $500. The District Court sentenced Clark to 6 months in the Lake County jail with 2 months suspended and fined Clark $500 in cause number DC-97-59.

6. Under § 61-8-714(3), MCA (1993), a third or subsequent conviction of driving under the influence of alcohol or drugs is punishable by imprisonment for not less than 30 days or more than 1 year and by a fine of not less than $500 or more than $1,000. The District Court sentenced Clark to 6 months in the Lake County jail with 3 months suspended and fined Clark $300.

7. Under § 61-8-715(2), MCA (1993), a person convicted of reckless driving shall be punished by imprisonment in the county or city jail for not less than 10 days or more than 6 months to which may be added at the discretion of the court a fine of not less than $300 or more than $500. The District Court sentenced Clark to 6 months in the Lake County jail with 3 months suspended and fined Clark $500.

8. Under § 61-8-304, MCA (1993), Clark was convicted of a basic rule violation for

speeding and fined $49.

While the second incident occurred on September 5, 1995, the 1995 statutes did not come into effect until October 1, 1995. Thus, since the law in effect at the time the defendant commits the crime controls sentencing, the 1993 statutes apply to the sentencing related to the offenses stemming from September 5, 1995, and June 13, 1994. *See State v. Wilson* (1996), 279 Mont. 34, 38, 926 P.2d 712, 715 (citation omitted).

¶38.The general rule with regard to sentencing is that a sentence within the maximum statutory guidelines does not violate the Eighth Amendment prohibition against cruel and unusual punishment. *See Dahms*, 252 Mont. at 13, 825 P.2d at 1221. The District Court properly based its sentencing on the factors listed in § 46-18-101(3), MCA (1993), and all but two of the sentences imposed are within the legal limits as set forth in the applicable statutes.

¶39.The District Court incorrectly applied the 1995 statute in sentencing Clark to 6 months in the Lake County jail for his conviction of operating a vehicle without valid liability insurance in violation of § 61-6-304, MCA. The maximum sentence allowed under § 61-6-304, MCA (1993), was 10 days. In addition, the District Court sentenced Clark to 10 days imprisonment and fined him $100 for his conviction relating to an accident involving damage to a vehicle. However, § 61-7-118, MCA (1993), allows for the imposition of imprisonment or a fine upon a first conviction, but not both. Thus, we conclude that the District Court erred as a matter of law when it incorrectly sentenced Clark with regard to his convictions for operating a vehicle without valid liability insurance and an accident involving damage to a vehicle.

¶40.Accordingly, we affirm in part and reverse in part the decisions of the District Court. We affirm the District Court's denial of Clark's motion in limine concerning witness identification testimony, the District Court's denial of Clark's motions to dismiss the charges of driving while license suspended or revoked, and the District Court's denial of Clark's motions to substitute prosecuting attorney. We reverse the District Court's sentencing on two of the counts: operating a vehicle without valid liability insurance and an accident involving damage to a vehicle. We remand this matter to the District Court for resentencing of those two counts consistent with the applicable statutes and this opinion.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER