No. 05-086

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 70

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

JERRY LEITHEISER,

        Defendant and Appellant.

APPEAL FROM:    The District Court of the Eighth Judicial District,
                  In and For the County Cascade, Cause No. ADC 2002-155(B),
                  Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Kenneth R. Olson, Olson Law Office, Great Falls, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; Mark Mattioli,
            Assistant Attorney General, Helena, Montana

            Brant S. Light, County Attorney, Great Falls, Montana

                       Submitted on Briefs:  January 18, 2006

                                Decided:  April 11, 2006

Filed:

_____
                         Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Jerry Leitheiser appeals his conviction on two counts of assault on a minor, a felony, in the Eighth Judicial District Court, Cascade County.  We state the issues as follows:

¶2    1.  Did the District Court err in denying Leitheiser's motion to withdraw his plea of *nolo contendere*?

¶3    2.  Did the District Court err in imposing sex offender treatment?

¶4    We affirm.

## BACKGROUND

¶5    On October 25, 2001, law enforcement dispatched Deputy Scott Wagner to the Evergreen Mall concerning a possible sexual assault.  Upon arrival, Deputy Wagner made contact with a woman who stated that her nine-year-old daughter recently revealed that she had been fondled on numerous occasions by her grandfather, Leitheiser.  When Deputy Wagner asked the girl what had occurred, she appeared shy, whispering responses to her mother, who in turn told the officer.  The mother, a single parent, stated that her daughter regularly stayed with Leitheiser and his wife, the girl's grandparents on her father's side.  The mother stressed that she believed Leitheiser to be a caring grandfather.

¶6    The girl reported three separate occasions of abuse.  In one instance, Leitheiser was driving with the girl on his lap when he allegedly unbuttoned her pants, put his fingers inside her underwear and "kind of squeezed it."  On a different occasion,

2

Leitheiser allegedly "put his fingers way up" inside the girl's genitals while he bathed her. During a third instance, the girl had been sleeping in Leitheiser's bed when she allegedly woke up in the middle of the night and found herself scooted down to Leitheiser's crotch with his hand inside her underwear and his fingers touching her everywhere inside her underwear, up and down  and outside her genitals.

¶7     The State charged Leitheiser by information with three counts of sexual assault, a felony. Although Leitheiser maintained his innocence throughout proceedings, he sought to avoid trial and imposition of sex offender treatment. His counsel therefore engaged the State in lengthy plea negotiations, with the parties agreeing that Leitheiser would plead guilty if the State amended the information to consist of two charges of assault on a minor, a felony, and recommended a five-year commitment to the Department of Corrections on each count with the sentences to run consecutively. Leitheiser and the State entered the plea agreement pursuant to § 46-12-211(1)(b), MCA, noting that "[s]ince the parties agree to the specific sentence, if the Court refuses to adopt the plea agreement, the Defendant shall be allowed to withdraw his guilty plea." In addition, the parties verbally agreed that the State would remain silent, rather than recommend sex offender treatment as a condition of the suspended sentence.

¶8     After the State amended the information, the court conducted a change of plea hearing, at which time the judge questioned Leitheiser about the voluntariness of his decision to plead, making sure Leitheiser understood the consequences. The judge made clear that the court was not necessarily a party to the plea agreement and could choose to

3

adopt or reject it. Acknowledging the binding nature of the change of plea agreement, the court opted not to accept the plea agreement at that time, but rather, took "the plea under advisement."

¶9 At the conclusion of the hearing, the court ordered Leitheiser to report to probation for a presentence investigation interview. Leitheiser complied. During the interview, attended by Leitheiser and his counsel, the probation officer informed Leitheiser in no uncertain terms that she would advise the court to impose sex offender treatment. Worried about such a recommendation, Leitheiser once again expressed concerns to his counsel that such treatment would jeopardize his ability to travel for work.

¶10 The final presentence investigation report recommended that the court require Leitheiser to complete sex offender treatment and have no contact with persons under age eighteen "unless accompanied by an approved and appropriately trained, responsible adult who is aware of [Leitheiser]'s sexual conviction . . . ." Leitheiser, who has many grandchildren he visits with regularly, filed a motion to withdraw his *nolo contendere* pleas when he realized that the probation officer's recommendations would likely become a part of his sentence. The District Court denied Leitheiser's motion and sentenced him to the Department of Corrections for a period of five years on both counts, to run consecutively, with all time suspended. The court ordered several conditions, including sex offender treatment and no unsupervised contact with individuals under eighteen.

¶11 Leitheiser timely appealed.

4

**STANDARDS OF REVIEW**

¶12    With respect to appeals from denials of motions to withdraw guilty pleas, we review the findings of fact of the trial court to determine if they are clearly erroneous, and conclusions of law to determine if they are correct. When the voluntariness of the plea is at issue, we review that ultimate mixed question of law and fact *de novo* to determine if the trial court was correct in holding that the plea was voluntary. *State v. Warclub*, 2005 MT 149, ¶ 24, 327 Mont. 352, ¶ 24, 114 P.3d 254, ¶ 24.

¶13    This Court reviews a district court's imposition of a sentence for legality. The standard of review of the legality of a sentence is whether the sentencing court abused its discretion. In reviewing the court's findings of fact, our standard of review is whether those findings are clearly erroneous. *State v. Mason*, 2003 MT 371, ¶ 19, 319 Mont. 117, ¶ 19, 82 P.3d 903, ¶ 19 (citations omitted).

**DISCUSSION**

¶14    **1. Did the District Court err in denying Leitheiser's motion to withdraw his plea of *nolo contendere*?**

¶15    Section 46-16-105(2), MCA, states:

> At any time before judgment or, except when a claim of innocence is supported by evidence of a fundamental miscarriage of justice, within 1 year after judgment becomes final, the court may, for good cause shown, permit the plea of guilty or nolo contendere to be withdrawn and a plea of not guilty substituted.

¶16    Leitheiser contends that the District Court erred in not permitting him to withdraw his plea of *nolo contendere*. Specifically, Leitheiser asserts that he showed "good cause"

5

for the withdrawal in that he pled guilty only because the State orally agreed to remain silent with regard to sex offender treatment and because his counsel assured him that since he did not plead to a sexual conviction the court "should not" impose sex offender treatment. Based on the foregoing assertions, Leitheiser argues that his plea was not "voluntary" within the meaning of *State v. Lone Elk*, 2005 MT 56, 326 Mont. 214, 108 P.3d 500.

¶17 In *Lone Elk*, we adopted a new test of voluntariness to be applied in cases where a defendant has sought to set aside a guilty plea. *Lone Elk*, ¶ 10, ¶ 21. We relied on *Brady v. United States* (1970), 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, "in which the United States Supreme Court examined a defendant's guilty plea to determine whether he had pled voluntarily." *Warclub*, ¶ 18. The Supreme Court stated in *Brady*:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless *induced by threats* (or promises to discontinue improper harassment), *misrepresentation* (including unfulfilled or unfulfillable promises), or perhaps by *promises that are by their nature improper* as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755, 90 S.Ct. at 1472, 25 L.Ed.2d at 747 (citation omitted) (emphasis added).

¶18 As noted in *Warclub*, we inadvertently misstated the above *Brady* standard in *Lone Elk*. Specifically, we conflated a quote from *Bram v. United States* (1897), 168 U.S. 532, 542-43, 18 S.Ct. 183, 187, 42 L.Ed. 568, that included a "however slight" standard, which *Brady* actually distinguished. *Warclub*, ¶ 18 and n.1.

6

> *Brady*, 397 U.S. at 753, 90 S.Ct. at 1471, 25 L.Ed.2d at 759, explains that *Bram*, 168 U.S. at 542-43, 18 S.Ct. at 187, 42 L.Ed. at 573, holds: "To be admissible, a confession must be 'free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, <u>however slight</u>, nor by the exertion of any improper influence.'" . . . It was the 'however slight' language, which *Brady* distinguished as applying only to *unrepresented* defendants during custodial interrogations, that we mis-attributed [in *Lone Elk*] as part of the *Brady* standard.

*Warclub*, n.1 (underlined emphasis added).

¶19    In *Warclub*, we took the opportunity to reaffirm our intention to use the *Brady* standard in determining the voluntariness of guilty pleas, but without incorporating *Bram*'s test.  *Warclub, ¶* 18.  Given that Leitheiser primarily relies on the "however slight" language from *Bram* that we inadvertently quoted in *Lone Elk*, his argument fails.

¶20    Applying the *Brady* standard, as correctly set forth in *Warclub*, we conclude that Leitheiser did not have good cause to withdraw his guilty plea since he voluntarily pled guilty—that is, his defense counsel, the State and the District Court fully advised Leitheiser of the consequences of pleading guilty and did not induce him to enter the agreement based on threats, misrepresentation or improper promises.  In reaching this conclusion, we note that during the plea hearing, Leitheiser answered affirmatively when asked if he understood that "the Court is not a party to [the] plea agreement" and "there are certain recommendations in the plea agreement that the Court can adopt or reject."  In addition, Leitheiser essentially concedes the voluntariness of his plea by stating in his appellate briefs that defense counsel advised: the State would not "recommend" sex offender treatment; his counsel would "recommend" against it; sex offender treatment

7

was not "necessarily" applicable; probation *could* recommend such treatment; the Court *could* choose to adopt the recommendation or not; and that the avoidance of sex offender treatment was merely a *possibility*. Having acknowledged the above admonitions, it is clear that Leitheiser understood that the court could and might impose sex offender treatment.

¶21 Leitheiser maintains that his plea to nonsexual charges, combined with the specifically bargained for deal that the prosecutor would remain silent as to sex offender treatment, induced him to plead guilty. The State, however, kept its promise. Thus, Leitheiser's grievance rests with the probation officer for recommending sex offender treatment in the presentence report. Yet, the probation officer was not a party to the plea agreement, as probation works independently of the prosecution. We have held before that "when a probation officer recommends a sentence different from that contained in a plea agreement, this does not constitute breach of the plea agreement by the prosecutor because the probation officer's recommendation is not equivalent to the prosecutor's recommendation." *State v. Bowley* (1997), 282 Mont. 298, 311, 938 P.2d 592, 600 (citing *State v. Yother* (1992), 253 Mont. 128, 137, 831 P.2d 1347, 1352).

¶22 We conclude that Leitheiser acted voluntarily and has not shown good cause for withdrawing his guilty plea. The District Court correctly denied his motion.

¶23 **2. Did the District Court err in imposing sex offender treatment?**

¶24 In the judgment of conviction and sentencing order, the District Court imposed conditions to Leitheiser's sentence, several of which related to the facts underlying the

8

charge of assault on a minor—that is, the sexual nature of the assault. Leitheiser argues that because he did not plead guilty to a sex offense, but rather, assault on a minor, the court lacked authority to impose these conditions. Leitheiser essentially argues that the court erred in looking to the underlying crime in determining his sentence. We disagree. The court was not looking to the charge of sexual assault, which was dismissed, but rather to the facts underlying the plea to the charge to which Leitheiser pled guilty—that is, assault on a minor.

¶25 "We have held that the rules of evidence are not applicable or controlling in sentencing hearings, as a sentencing court is allowed to have the fullest information possible concerning the defendant's life and characteristics in order to individualize punishment." *State v. Ferguson*, 2005 MT 343, ¶ 109, 330 Mont. 103, ¶ 109, 126 P.3d 463, ¶ 109. "Moreover, in imposing sentence, the sentencing court may consider any relevant evidence relating to the nature and circumstances of the crime . . . ." *State v. Collier* (1996), 277 Mont. 46, 63, 919 P.2d 376, 387.

¶26 Prior to adopting the probation officer's recommendation of sex offender treatment during the sentencing hearing, the court noted that it "would be remiss if it sentenced [Leitheiser] and ignored the underlying factual situation." We agree with the court and hold that it did not abuse its discretion by imposing sex offender treatment as a condition of Leitheiser's sentence.

¶27 Affirmed.

/S/ W. WILLIAM LEAPHART

9

We concur:

/S/ BRIAN MORRIS
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE